**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| PETER DAFFERNER, | : | |
| | : | Civil Action No. 13-1506 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | April 27, 2015 |
| Respondent. | : | |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is the motion of Peter Dafferner ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255.   (ECF No. 1, 7.)   Respondent, United States of America ("Respondent"), filed a response (ECF No. 15), to which Petitioner replied (ECF No. 16).   For the following reasons, the Court denies the motion and no certificate of appealability shall issue.

## I.  BACKGROUND

The arrest and prosecution of Petitioner arose out of an FBI investigation into a website which offered individuals access to child pornography in exchange for western union payments. (PSR at ¶ 9-10).   While investigating this website, the Government determined that one of the e-mails used to access the site belonged to Petitioner.   (*Id.* at ¶ 9-11).   On March 27, 2009, the FBI, through an undercover website, sent Petitioner an e-mail which offered him access to child pornography.   (*Id.* at ¶12).   The following day, a computer using an IP address assigned to

Petitioner attempted to access the website three times and attempted to download material from the site eight times.   (*Id.*).   The FBI then acquired a search warrant and executed it on September 30, 2009, recovering numerous computer hard drives containing 726 images and one twelve second video of child pornography, as well as "a large notepad with pornographic titles; and, various sheets of paper containing user names and passwords."   (*Id.* at ¶ 13, 17-18, 24).   Among the images seized were images which depicted sadomasochistic sex acts inflicted upon children and images involving the sexual abuse and penetration of infants and toddlers.   (*Id.* at ¶ 17-18).

Following the raid on his home, Petitioner was interviewed by FBI agents on September 30, 2009.   (*Id.* at ¶ 14).   Although Petitioner initially denied visiting child pornography websites, he eventually admitted that he had received e-mails offering such materials and had used those e-mails to access those materials.   (*Id.* at ¶ 14-16).   Specifically, Petitioner stated that

> he became curious about why pornography was a billion dollar business and about what motivated others to view all types of pornography from young children to elderly people.   He stated he began researching and writing to develop a hypothesis and, as part of this research, provided his credit card information in order to access child pornography.   He recalled membership to the child pornography website cost $39, and that he uses his Visa credit card and aforementioned email to sign up. However, after successfully submitting his information, [Petitioner] stated he was unable to gain access to the child pornography website.   [Petitioner] admitted that he knew receiving, possessing, and distributing child pornography was illegal, but that he thought it was ok to investigate his hypothesis.   [Petitioner] then stated he had not recorded anything, on paper or electronically, concerning the pornography research he was conducting.

(*Id.* at ¶ 16).   Petitioner was eventually arrested on May 21, 2010, and indicted for one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).   (*Id.* at 1).

Petitioner entered into a written Plea Agreement on August 9, 2010.   (*Id.* at ¶ 4).   The

Plea Agreement informed Petitioner that his sentence, in addition to fines, was subject to a maximum prison sentence of 10 years, and that his sentence would be subject to a guidelines calculation, which was not binding on the Court, and subject to the sentencing judge's discretion. (Plea Agreement at 2).  Pursuant to the agreement, Petitioner and the Government agreed to stipulate to the following facts for the purposes of sentencing Petitioner for a guilty plea for possession of child pornography: that Petitioner was in possession of over six hundred images of child pornography on September 30, 2009, that some of the images were of prepubescent minors and minors under the age of twelve, that some of the images of child pornography portrayed sadomasochistic conduct, that Petitioner used a computer to receive and possess the illegal images, that Petitioner's sentence should receive a two step enhancement under Guideline 2G2.2(b)(6) as Petitioner's conduct involved the use of a computer for the possession and transmission of child pornography, that Petitioner had clearly demonstrated acceptance of responsibility for the charged offense, that Petitioner had aided authorities in avoiding preparation for trial, and that if the sentencing court accepted these facts for the purposes of sentencing, Petitioner gave up his right to appeal or collaterally attack the sentence on the basis of these stipulated facts.  (*Id.*).  As part of the Agreement, Petitioner also agreed to forfeit the computer hardware he had used in the commission of his offense.  (*Id.* at 8, PSR at ¶ 5).

Prior to his plea hearing, Petitioner also submitted to the Court his application to enter a guilty plea.  In the application, Petitioner certified that his lawyer had informed him that his maximum potential sentence was ten years.  (Plea Application at 4).  In the application, he also acknowledged that his lawyer had explained his rights to a jury trial and that he was waiving those rights by pleading guilty.  (*Id.* at 3).  Finally, Petitioner certified that he understood that he would

be sentenced pursuant to this Court's discretion after consideration of the non-binding Sentencing Guidelines and the relevant sentencing factors.   (*Id.* at 5).

This Court held a plea hearing on March 9, 2011.   (Plea Transcript, Document six attached to ECF No. 7).   During the hearing, the Court asked Petitioner whether he had the opportunity "to speak to [his] attorney with respect to [his] rights in this matter, specifically, whether you should plead guilty," which Petitioner stated that he had.   (*Id.* at 3).   Petitioner also stated that his trial counsel had answered all of his questions.   (*Id.* at 3-4).   The Court then explained that Petitioner was waiving his right to trial by pleading guilty, including the right to have the case against him proven beyond a reasonable doubt, which Plaintiff stated he understood.   (*Id.* at 4).   The Court specifically asked Petitioner if this plea was being entered into voluntarily, to which Petitioner responded affirmatively.   (*Id.*).   The Court then asked whether Petitioner understood that once he entered his plea, Petitioner could not withdraw it just because he disliked the sentence he received, which Petitioner said he understood.   (*Id.* at 4-5).   The Court then discussed sentencing with Petitioner as follows:

> THE COURT:  All right.  And you should also be advised that while I will certainly refer to the Sentencing Guidelines and use them in an advisory capacity, I'm not bound by those Guidelines and any sentence I impose, I impose within my discretion.  You understand that?
>
> [Petitioner]:  Yes, I do, your Honor.
>
> THE COURT:  Okay.  Now did you speak to [counsel] regarding the Sentencing Guidelines and the role that they play?
>
> [Petitioner]:  Yes.
>
> THE COURT:  Okay.  And do you need me to explain that any further?

4

[Petitioner]:  No, ma'am.

THE COURT:   All right.   Now you should also be aware that any – it does not matter what agreement you may have reached with your attorney, or your attorney may have reached with the Government, none of those agreements are binding on . . . the Court.   And, once again, . . . any sentence that is imposed, I impose within my discretion.   You understand that?

[Petitioner]:   Yes, ma'am.

THE COURT:   Okay.   Now, knowing all those things, [Petitioner], do you still wish to enter a plea of guilty?

[Petitioner]:   Yes.   Yes, your Honor.

(*Id.*at 5-6).

The Court then asked Petitioner if he had had a chance to discuss his plea application with his attorney, which Petitioner said he did.   (*Id.* at 6).   Specifically, this Court asked Petitioner if "all of its contents, the application for permission to enter a plea of guilty, were all of its contents explained to you[.]"   (*Id.*)   Petitioner said that they had been explained and that he was satisfied with the explanations that he had received.   (*Id.*).   Petitioner also stated that his attorney had gone over the plea agreement in detail and explained it to him.   (*Id.*).   This Court then drew Petitioner's attention to the consequences of his plea regarding the requirement that he register as a sex offender.   (*Id.* at 7).   This Court explained that Petitioner would have to "register and keep the registration current" in the jurisdictions in which he lived, worked or study.   (*Id.* at 8).   The following exchange then took place:

THE COURT: So you understand, upon entering this plea of guilty, there are certain requirements with respect to registering that flow from this guilty plea?

5

[Petitioner]:   Well, I guess, if I may just – I know – I don't know if I'm allowed to say anything.   I do, but.

THE COURT:   You don't agree with it?

[Petitioner]:   Yeah, I will do what I'm told to do, but it's with a heavy heart.

THE COURT:   I don't doubt that.

[Petitioner]   I guess I have to agree to that if I'm agreeing to everything else.

THE COURT:   Well, I just want to make sure you know that's part of your plea agreement.   And I want to make sure that before you enter this plea of guilty, that with the advice of counsel, you understand that there are certain consequences, obviously, as a result of entering this plea.

[Petitioner]:   Yes, ma'am.

THE COURT:   And one of them is all the materials that were seized from your home will be forfeited.

[Petitioner]:   That's fine.

THE COURT:   And secondly, that you do and will be required to register and keep your registration current.

[Petitioner]:   Yes.

THE COURT:   As a result of entering this plea.

[Petitioner]:   Yes, ma'am.

THE COURT:   Okay.   And it goes into detail in your plea agreement and so you do understand that, correct?

[Petitioner]:   Yes, ma'am.

(*Id.* at 8-9).   The Court then also reviewed the appellate waiver with Petitioner, which Petitioner

stated that he understood and that he voluntarily wanted to waive his rights and plead guilty after

6

having discussed the matter with his attorney.   (*Id.* at 9-10).

This Court then conducted the following colloquy establishing the factual basis for Petitioner's offense:

> THE COURT:   On or about September 30th, 2009, did you possess ad store on your . . . computer . . . at least three images containing child pornography?
>
> [Petitioner]:   Yes.
>
> THE COURT:   Did you obtain these images of child pornography through use of the internet?
>
> [Petitioner]:   Yes.
>
> THE COURT:   Did you know that among the individuals depicted in the images containing child pornography that you stored and possessed were numerous individuals who were clearly prepubescent minors, that is, minors under the age of twelve years old?
>
> [Petitioner]:   Yes.
>
> THE COURT:   Did you know that the images containing child pornography that you stored and possessed depicted minors engaging in sexually explicit conduct with other minors or adults, as well as photographs of minors posing in a sexually explicit manner?
>
> [Petitioner]:   May I just –
>
> THE COURT:   Sure.
>
> [Petitioner]:   Yes.
>
> THE COURT:   Did you know that the images containing child pornography that you stored and possessed depicted minors engaging in sadistic and masochistic sexual conduct?
>
> [Petitioner]:   Yes.
>
> THE COURT:   Did you believe, at the time that you possessed the

images containing child pornography, that the images depicted
actual children as opposed to computer-generated likenesses?

[Petitioner]:  Yes.

THE COURT:  As of today, do you still believe that the images
containing child pornography that you stored and possessed
depicted actual children?

[Petitioner]:  Yes.

THE COURT:  Did you possess the child pornography that was
stored on your . . . computer knowingly, that is, voluntarily and with
the knowledge that you were storing images of child pornography?

[Petitioner]:  Yes.

THE COURT:  Do you know that your conduct in fact violated the
law?

[Petitioner]:  Now.  Okay, yes.

THE COURT:  All right, and you are in fact pleading guilty
because you are in fact guilty of the charge in the indictment?

[Petitioner]:  Yes.

(*Id.* at 11-13).

The Government thereafter represented to the Court that had the matter been tried, it would

have been able to prove beyond a reasonable doubt that the images contained on Petitioner's

computer contained child pornography, that the children in the images were under eighteen years

of age, and that the images were retrieved through the use of interstate commerce.  (*Id.* at 13-14).

Based on the factual recitation and the Government's representations, as well as the satisfaction of

Defense Counsel as to the recitation, the Court concluded as follows.

[The Court is] satisfied, [Petitioner], that with the advice of counsel,
that you have entered this plea today knowingly and voluntarily, that

8

> you do understand your right to proceed to trial in this mater, and
> that you are voluntarily waiving that right to proceed to trial.   In
> addition, you have, upon the advice of counsel, . . . entered this plea
> of guilty understanding the consequences of certain stipulations in
> that plea agreement.   And [the Court is] also satisfied that your
> responses establish a factual basis.

(*Id.* at 14).   This Court therefore accepted Petitioner's guilty plea.   (*Id.*).

This Court sentenced Petitioner on November 14, 2011.   (Sentencing Transcript attached as Document 7 to ECF No. 7).   During sentencing, defense counsel argued at length that the Court should grant a downward variance from the guideline range suggested in the PSR.   (*Id.* at 4). Specifically, counsel argued that Petitioner's traumatic childhood during which he was subjected to physical and sexual abuse, his age, health, and Petitioner's claim that he had not accessed the child pornography for the purposes of sexual gratification all merited a variance from the guideline range.   (*Id.* at 4-6).   Counsel also presented both clinical evaluations and a personal letter from Petitioner's therapist, which argued that Petitioner was not a threat, nor had he engaged in his conduct for sexual reasons.   (*Id.* at 6-7).   The therapist also opined in the letters that Petitioner did not present a danger to the community and was not at risk for recidivism.   (*Id.*).   Counsel also argued that Petitioner's previously law abiding life and family connections also warranted a downward variance from the Guidelines range.   (*Id.* at 7-8).

Petitioner also gave an extended statement to the Court.   During his statement, Petitioner suggested that he had downloaded the child pornography with "honorable" intentions, specifically as part of an endeavor to study and write a book called "Cancer of the World" about the evils of pornography.   (*Id.* at 8-9).   Petitioner then admitted that he had "screwed up" and that he was now writing a novel about abuse survivors.   (*Id.* at 9-10).   Petitioner connected the two endeavors

9

by stating that he was "so desperately apologetic to all the people I have harmed and all the, you know, the grandest of intentions isn't worth the smallest of deeds." (*Id.* at 10). Petitioner also stated that his attempt to write his book on pornography didn't come to fruition because he was incapable of producing the work, that he had written several stories but was unknowledgeable about the finer points of writing. (*Id.* at 10). He then argued that he was not a pedophile, but rather the "antithesis" of such, but was "ready to face [the Court's] sentencing." (*Id.*).

The Government then rebutted Petitioner's arguments. The Government argued that the crime Petitioner had committed was a serious one and certainly merited a sentence within the Guidelines range of 78 to 97 months. (*Id.* at 11). The Government also argued that the therapist's letters did not support a downward variance as they were "more conclusory than anything else" and did not provide a "full grasp" of Petitioner's situation. (*Id.* at 12). The Government also argued that despite Petitioner's statement about writing a book on pornography, no manuscript or other evidence of such a plan had been produced, and that the writing of a book did not require Petitioner to amass several hundred images of graphic child pornography. (*Id.* at 13).

Having heard these arguments, this Court rejected Petitioner's request for a downward variance, explaining that

> [t]here's been nothing that's been presented to the Court, short of [Petitioner's statement that he] was not an abuser, he merely looked at the pictures. And other Judges have held in the past that that does not rise to the level of obviously being an abuser and therefore the Sentencing Guidelines are too severe in what they recommend. I am certainly aware of the . . . fact that the Guidelines are not binding on me and that I can use those Guidelines in an advisory capacity, but the sentence that I impose is the sentence I impose within my discretion, [as] I advise all defendants as well as I'm sure I advised

> [Petitioner] when he pled guilty before me in March.   But I have to
> look at [Petitioner] as an individual and his history and
> characteristics that come before this Court now and try to impose a
> sentence that is sufficient but not greater than necessary to reflect
> the seriousness of what happened here, in addition to promot[ing]
> respect for the law[.]

(*Id.* at 14).    Following this statement, defense counsel suggested that he could provide

manuscripts to the Court of the works that Petitioner had written.   (*Id.*).   This Court questioned

why these manuscripts had not previously been submitted, noting that it had been mentioned

several times, including during Petitioner's interviews during the PSR process, that no manuscripts

had been provided.   (*Id.*).   To this, counsel suggested that the manuscript for Petitioner's

autobiography had not been submitted previously because it was three hundred pages long.   (*Id.*

at 15).   In any event, the Court concluded that the manuscripts were "neither here nor there for

my purposes, quite frankly," and that the submission would not have changed the Court's

decision.[1]   (*Id.* at 14).

The Court then examined the facts of Petitioner's sentence in light of the sentencing factors.

In so doing, the Court noted that

> [a]s it related to [Petitioner's] claim that he was writing or going to
> write a book about the cancer of the world and the fact that children
> are being abused on a daily basis, that maybe true, it may not be true.
> I really don't have a position one way or another.   My responsibility

---

[1]  Petitioner's motion brief suggests that the manuscripts about which defense counsel spoke
were for "Cancer of the World," petitioner's purported book on child pornography.   Viewed in
the context of Petitioner's statement to the Court, as well as the response of Counsel regarding
the length of Petitioner's autobiography, it appears that the manuscript which could have been
presented was unrelated to the child pornography "research."   (*Id.* at 8-10, 14-15).   There is no
evidence in the record that Petitioner ever actually produced any written work specifically
related to his claim that he was researching pornography to write an expose on its evils, only that
he had written several other stories, including the three hundred page autobiography.

here is to address the crime to which you have entered a plea and therefore have been found guilty, in addition to attempt to protect the public from crimes of this nature.   And many people come before this Court charged with this same offense, quite frankly. [Petitioner] indicated [that he didn't] know it was illegal to do this. And I think the whole point is there is a need to deter the conduct. There is a need to deter not only [Petitioner] but to deter others from engaging in conduct of this nature.   I for one do not believe it takes 726 pictures and a film to write anything about something this horrific.   That's just me, but I'm also not writing.   So, you know, the fact that you've never provided any type of manuscript as it relates to this book that you were doing research for, it's neither here nor there, if you did research.   As I said, you [may] have many pages of writing s you've done as relates to the 726 pictures that were part of this offense, but that's here nor there.   But as far as the Court is concerned, the offense to which you've entered a plea of guilty appropriately lands under the Sentencing Guidelines and an offense level of 28 with a criminal history category of 1.

I do note that you have no prior criminal offense, certainly not one for many years as it relates to coming before this Court, so I'm certainly mindful of that.   I'm also aware, as I've already indicated, that you have entered a plea of guilty in this matter.   And it's important to note that there were certain stipulations made at the time you pled guilty.   One, that there were minors under the age of 12, and prepubescent minors that were in those images.   There was a stipulation as well that some of these pictures portrayed sadistic and masochistic conduct.   In addition to that, there was a use of a computer, and as well as that, there were more than 800[2] images of the child pornography therefore warranting a five-level increase as well, which is calculated under the Sentencing Guidelines.   In this case, I am satisfied that the Guidelines accurately reflect an appropriate sentence.   The sentence will be one that the Court feels is appropriate under all of the circumstances and all of the information that's been provided as well as all of the arguments that have been made before the Court.

---

[2]  The conclusion in the presentence report that Petitioner had possessed over 800 images was based on his possession of 726 images and one video, with one video being treated as the equivalent of seventy five images for the purposes of the Guidelines calculations.   *See* U.S.S.G. § 2G2.2, application note to section (b)(7).   The difference between the over 600 stipulated in the Plea Agreement and over 800 found in the PSR is immaterial, however, as the maximum enhancement under the guidelines for the number of images is applicable in all cases where the defendant possessed more than 600 images.   *See* U.S.S.G. § 2G2.2(b)(7)(D).

> . . . .
>
> It will be the sentence of this Court, pursuant to the Sentencing Reform Act of 1984, that you'll be committed . . . to be in prison for a term of 78 months[.]

(*Id.* at 15-18).

While he was being sentenced, Petitioner made a final statement in which he belatedly questioned the facts supporting his sentence.  In that statement, Petitioner admitted to being a "law breaker" but argued that he was not a criminal as he "didn't know" he was breaking the law when he downloaded the pictures.  (*Id.* at 17).  He also argued that he didn't understand the number of pictures for which he was sentenced and to which he had previously stipulated in his plea agreement.  (*Id.*).  Petitioner stated that he didn't know where the number came from and that he was "more interested in the names and titles" of the pictures and had never actually looked at them.  (*Id.*).

Following his sentence, Petitioner appealed to the Court of Appeals for the Third Circuit. On appeal, Petitioner did not challenge the Guidelines calculation, but instead argued that the Court had not properly applied the sentencing factors under 18 U.S.C. § 3553(a).  *United States v. Dafferner*, 489 F. App'x 532, 533 (3d Cir. 2012). The Third Circuit affirmed Petitioner's sentence, finding that this Court had not abused its discretion in either sentencing him or in refusing to grant a downward variance from the Guidelines range.  *Id.* at 533-34.

## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## B. Analysis

## 1. An evidentiary hearing is not required

The habeas statute requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). Where the record, as supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicate that petitioner is not

entitled to relief as a matter of law, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary hearing only necessary where the petitioner's claims are not conclusively resolved by the record). For the reasons explained below, Petitioner's claims are without merit, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law. An evidentiary hearing is thus not required.

## 2. Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective. Claims of ineffective assistance of counsel under the Sixth Amendment are governed by the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). Second, a petitioner must show that counsel's deficient performance prejudiced his defense such that counsel's errors were so serious as to "deprive [the petitioner] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In determining whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Thus, petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances. *Id.* Reasonableness in this

context is determined based on the facts of the particular case, viewed as of the time of conduct alleged to have been ineffective.   *Id.*   Judicial scrutiny of counsel's performance "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689.   Even if Petitioner shows that counsel was deficient, he must still affirmatively demonstrate prejudice to his defense.   *Id.* at 692-93.   "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.   Petitioner must show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

### a.   Petitioner's claim that counsel was ineffective in failing to advise Petitioner during the guilty plea

Petitioner argues that he was not provided effective assistance of counsel during the guilty plea phase of his prosecution.   Specifically, he contends that counsel did not advise him fully as to his right to proceed to trial, the Sentencing Guidelines, and potential sentencing exposure, such that Petitioner's plea was not knowingly and voluntarily entered.   Petitioner's claims, however, are belied by the statements he gave under oath during the plea hearing.

Petitioner first argues that his counsel failed to advise him vis a vis his claim that he did not know that his downloading and possession of child pornography was illegal.   Petitioner's argument, however is misguided.   The offense for which he was convicted, knowing possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) has no requirement that a

16

defendant know that it is illegal to view and possess such images.   The statute only requires that the defendant know that he possesses "an image of child pornography."   18 U.S.C. § 2252(a)(5)(B).   The knowledge requirement that applies to violations of the statute only requires that one know that the image contains depictions of minors engaged in sexually explicit activity. *See, e.g.*, *United States v. Pruitt*, 638 F.3d 763, 767 (11th Cir. 2011) (viewing images the defendant knew contained sexual images of minors is enough to establish knowing receipt); *United States v. Marchand*, 308 F. Supp. 2d 498, 505 (D.N.J. 2004) (knowledge element requires proof that the defendant knew that he possessed images of real minors engaged in sexually explicit conduct). Petitioner does not dispute that he knew the images were of such a nature.   Any claim that Petitioner was ignorant of his ability to raise a non-defense, that he didn't know viewing child pornography was illegal, would therefore be insufficient to show that counsel was ineffective, let alone that Petitioner suffered any prejudice as a result.   *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("[c]ounsel cannot be ineffective for failing to raise meritless claims"); *United States v. Berry*, 314 F. App'x 486, 489 (3d Cir. 2008); *Wets v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998).

Petitioner then argues that he was inadequately advised of his right to proceed to trial.   The transcript of the plea hearing clearly refutes this assertion.   This Court discussed at length the right to go to trial and related rights that Petitioner was giving up by pleading guilty, and asked Petitioner multiple times whether he knew he was giving up those rights and that he wished to do so. Petitioner repeatedly confirmed that he had been made aware of those rights and that he wished to plead anyway.   Petitioner specifically stated that he had discussed with his attorney his right to go to trial and whether he should do so.   Petitioner also confirmed with the Court that he had

17

discussed with his attorney, to his satisfaction, the plea application form which also contains this same information and yet wished to proceed with his guilty plea.   The record thus belies Petitioner's claim that he was unaware of his right to go to trial.

Petitioner's final plea related claim is that his counsel did not adequately explain to him the United States Sentencing Guidelines and their applicability to his case.   Here, too, the plea colloquy contradicts Petitioner's claims.   During the colloquy, this Court directly asked Petitioner whether the Guidelines had been explained to him by his attorney, and Petitioner confirmed that they had.   The Court also asked whether Petitioner had any questions or required any further explanation regarding the guidelines, and Petitioner said that he did not.

To the extent that Petitioner is arguing that he pled on the basis of an incorrect sentencing prediction by counsel, the record also refutes that claim.   In the context of a guilty plea, defense counsel is required to provide a defendant with sufficient information "to make a reasonably informed decision whether to accept a plea offer."   *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013), *cert. denied*, --- U.S. ---, 134 S. Ct. 1340 (2014).   The Third Circuit has identified sentencing exposure as an important factor in a defendant's decision whether to plead guilty as "'[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'"   *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).   An erroneous sentencing prediction, however, "'is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted.'"   *Id.* (quoting *Shedrick*, 493 F.3d at 299).

The Third Circuit has recognized

> that the maximum sentence authorized by law is often so

> extraordinarily long that few defendants other than "career criminals" plead guilty with the expectation that the maximum sentenced applies to them. However, all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.

*United States v. Mustafa*, 238 F.3d 485, 492 n. 5 (3d Cir. 2001); *see also Shedrick*, 493 F.3d at 299. The conjectures of defense counsel "are irrelevant where the written plea agreement and the in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *Shedrick*, 493 F.3d at 299.

Here, both the plea agreement and plea application directly informed Petitioner that he was subject to a maximum sentence of ten years. Both documents also informed Petitioner of this Court's discretion in sentencing him. By signing the plea agreement and certifying the accuracy of the plea application, Petitioner directly acknowledged that he had received an explanation of these facts from his counsel, was aware of the potential maximum and the Court's sentencing discretion, and still wished to plead guilty. That this Court also asked him whether he had any questions regarding the guidelines or their applicability, or as to the Court's discretion further indicates that Petitioner's claim that he was misled into pleading guilty by an erroneous sentencing prediction is not sufficient to make out a claim for ineffective assistance of counsel.[3] *Id.*

---

[3] To the extent Petitioner suggests that he did not understand the plea colloquy, a review of the record shows that Petitioner's argument is based on taking certain small sections of the colloquy out of context. The Plea Transcript shows that throughout most of the colloquy, Petitioner showed no indication that he did not understand the proceedings or otherwise misunderstand what he was doing by entering a plea of guilty. Even the small sections Petitioner quotes out of context, including Petitioner's supposition that he accepted the registration consequences "with a heavy heart," when read as part of the colloquy as a whole, do not indicate to this Court that

**b.  Petitioner's claim that he received ineffective assistance of counsel at sentencing**

Petitioner also claims that his trial counsel was ineffective during sentencing.   Petitioner argues two points:   that counsel did not argue against the guideline range determined by Probation in the PSR, and that counsel failed to call Plaintiff's therapist as a witness during sentencing. Petitioner's first argument is patently without merit.   The guideline determinations made by the PSR, and accepted by this Court, was based entirely on the facts to which Petitioner stipulated in his plea agreement.   Under the Agreement, counsel for Petitioner could not challenge those facts at sentencing without violating the agreement.   The facts stipulated are all of those Petitioner now argues counsel failed to raise, including the number of images found on Petitioner's computer. As counsel was prevented from raising those claims at sentencing by the Plea Agreement, he could not have been ineffective at sentencing for failing to argue against Petitioner's own stipulations as such an argument would have been fruitless.[4]   *See Aldea*, 450 F. App'x at 152; *Berry*, 314 F.

---

Petitioner lacked an understanding of what he was doing by entering a guilty plea.

[4]  The Court also notes that, just as counsel could not argue the stipulations at sentencing under the Plea Agreement, the Agreement's appellate and collateral waiver would likely bar any such arguments here as the Court finds that Petitioner has not shown a miscarriage of justice in his arguments regarding his guilty plea discussed above.   *See United States v. Khattak*, 273 F.3d 557, 558, 560 (3d Cir. 2001) (such waivers are enforceable absent an error amounting to a miscarriage of justice).

Likewise, to the extent that Petitioner wishes to challenge the guideline calculation itself, that claim is not cognizable here.   *United States v. Ruddock*, 82 Fed. Appx. 752, 758 (3d Cir. 2003) ("Errors in the implementation of the Sentencing Guidelines are generally not cognizable in a collateral attack" unless they present an issue of constitutional dimension); *see also United States v. Cepero*, 224 F.3d 256, 267-68 (3d Cir. 2000), *abrogated in part on other grounds*, *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012).

App'x at 489; *Wets*, 228 F.3d at 203; *Fulcomer*, 150 F.3d at 328-29.

Petitioner's final argument is that his counsel was ineffective for failing to call his therapist as a witness during sentencing.   Preliminarily, the Court notes that counsel's performance is "virtually unchallengeable" where, after reasonable investigation, counsel makes strategic choices as to how best to represent his client.   *Strickland*, 466 U.S. at 690.   Here, counsel was clearly aware of the therapist's opinions, and argued that those opinions merited a downward variance from the Guidelines range at sentencing.   Counsel specifically provided the Court with not only the therapist's professional opinion, but also a private letter from the therapist, something the therapist suggests he has never done for any previous patient, urging the Court to leniency. Counsel's choice to submit the letters without calling the therapist to testify at sentencing permitted him to support his request for leniency with the personal and professional opinions of an educated expert without subjecting that expert's opinion to cross examination.   Given the Government's strong opposition to those opinions during sentencing, where the Government characterized the therapist's opinions as threadbare and conclusory, had counsel called the therapist he most certainly would have been cross examined at length.   Counsel thus made a strategic choice not to call the therapist, which this Court should not second guess.   *Id.*

Even were this Court to give Petitioner the benefit of the doubt and presuppose that this strategic choice was an error sufficient to meet *Strickland's* first prong, however, Petitioner's claim would still fail as he cannot show prejudice.   "Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said."   *D'Amario v. United States*, 403 F. Supp. 2d 361, 372 (D.N.J. 2005).   Where an expert report has provided the Court with the information to which an expert would have testified and that report is submitted

to the Court, no prejudice results from the failure to call that expert as a witness at sentencing. *See Venezia v. United States*, 884 F. Supp. 919, 924 (D.N.J. 1995); *see also Beckford v. United States*, No. 07-4427, 2008 WL 2559305, at *4 (D.N.J. June 24, 2008).   Here, the Court fully considered the two letters, both professional and personal, submitted on Petitioner's behalf by the therapist and found that they did not warrant a downward variance from the Guidelines range.   As such, any testimony from the therapist would only have echoed the reports the Court had already considered, and no prejudice resulted to Petitioner from the failure to call the expert as a witness. *Beckford*, 2008 WL 2559305, at *4.   Petitioner thus has failed to show that he suffered ineffective assistance of counsel at sentencing, and it is clear from the record that he is not entitled to relief on any of his claims.[5]

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), Petitioner may not appeal from a final order in a proceeding under §2255 unless Petitioner has "made a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason

---

[5] Petitioner briefly also suggests counsel was ineffective for failing to provide Petitioner's writings to the Court before sentencing.   On this point, the Court notes that as the Court specifically stated that the existence of the writings was immaterial to its sentencing decision, no prejudice resulted to Petitioner by this "failure," if failure it was, and as such Petitioner has not shown that he is entitled to habeas relief.   *Shedrick*, 493 F.3d at 299 (requiring a showing of prejudice to make out an ineffective assistance of counsel claim).   The Court also notes, however, that the sentencing record suggests that the writings which counsel stated he possessed were actually manuscripts of stories written by Petitioner, including his autobiography, which were wholly unrelated to his alleged research into pornography, and Petitioner's argument is therefore misguided in so much as it suggests that counsel had copies of any writing related to that "research."

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   As Petitioner's claims are without merit, he has failed to make a substantial showing that he was denied a constitutional right, and no certificate of appealability shall therefore issue.

**IV. CONCLUSION**

     For the reasons stated above, petitioner's motion is DENIED, and no certificate of appealability shall issue.   An appropriate order follows.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

Orig:       Clerk
cc:         Parties
           Magistrate Judge Steven C. Mannion